MOHEAD *v.* GILMER GROCERY CO., INC.[*]

(Division A. March 25, 1929.)

[121 So. 143. No. 27804.]

468

*Corpus Juris-Cyc References:  Trial, 38Cyc, p. 1516, n. 57; p. 1676, n. 74; Witnesses, 40Cyc, p. 2555, n. 42.

*B. B. Allen*, for appellant.

*Forrest G. Cooper,* for appellee.

McGowen, J. In the circuit court, Mohead, the appellant, sued Gilmer Grocery Company, the appellee, for five hundred fifty-five dollars and thirty cents for accrued bonus of fifty cents a bale for cotton ginned during the ginning season of 1925 and 1926 in excess of two thousand bales. The appellant's evidence was to the effect that an oral contract was made with Gilmer, the president of Gilmer Grocery Company, for the season of 1925-26 for the personal service of Mohead as gin manager at a salary of one hundred seventy-five dollars a month and fifty cents per bale for each bale of cotton ginned in excess of two thousand bales.

Sims, the gin superintendent and agent of appellee, claimed that he himself made the oral contract with the appellant, Mohead, and that his term of employment was to expire on January 1st, and that during the month of January he made a new contract with Mohead by which Mohead was to receive one hundred seventy-five dollars and no bonus on and after February 1, 1926, during that ginning season. Before the suit was brought, Gilmer, the president of the corporation, wrote a letter to Mohead, the appellant, in which he stated that the gin company did not owe the appellant a penny. This letter was written in September. Gilmer died about the first of November, and the suit was brought the following year. The first suit brought was for the same amount, but the figures going to make up the account and show the balance were entirely different. A nonsuit was taken by the plaintiff at that time. This was a suit upon an oral contract, and the main testimony was delivered by Mohead on the one hand and Sims on

the other, with the letter of the dead president in aid of the defense made by the gin company. Several errors are assigned, but we shall only notice two.

1. On cross-examination, Mohead, the plaintiff, was asked the following questions, to which he made the replies herein set forth, to-wit:

"Q. You had known Dever Gilmer some time prior to his death? A. Yes, sir, just a little over two years.

"Q. You had always found Dever carrying out his promises to you? A. Yes, sir.

"Mr. Allen: We object to his trying to qualify a dead witness. We object to that. We object to that line of examination. It has no bearing on this case.

"Court: Overruled and exception by plaintiff.

"Q. Hadn't you always found that Dever carried out his word to you? A. He always had.

"Q. The fact of the business is, you believe Dever was the soul of honor. A. He was a mighty good man."

It will be remembered that Dever Gilmer had written a letter denying liability addressed to Mohead, the appellant, and before the trial of this case and subsequent to writing the letter he died, and the letter was admitted in evidence.

This line of cross-examination is not permissible. A plaintiff may not bolster up a dead witness' reputation and character for fair business dealing or "making his word good," or similar statements. While wide latitude is allowed in cross-examination, these questions propounded to a truthful witness were to put him at a disadvantage, whether he attacked the character of the witness or sustained it for the particular quality then sought to be established. This line of examination has been condemned in the case of *Brewer* v. *Mullins,* 97 Miss. 353, 52 So. 257, wherein Judge ANDERSON said: "The court erred in permitting testimony to uphold the character of the witness Mullins for truth and veracity, when it had not been directly assailed. It was not an

issue before the jury, and could not be made one, except by his adversary attacking it in the manner laid down by law. The issue of fact before the jury seems to have been about evenly balanced. Under these circumstantial, such testimony probably had influential weight with the jury. Reversed and remanded.''

The case at bar was a close case. The evidence was in sharp conflict, and to require the plaintiff to testify as to the character of the dead witness, Gilmer, was error in view of the fact that no attack had been made upon his character. This had influential weight with the jury.

At the instance of the defendant the court gave instruction No. 3, which is as follows: ''The court instructs the jury for the defendant that where the making of an oral contract is denied, and the defendant is precluded from the testimony of the agent of the defendant making the oral contract by his death, it is the right and privilege of the defendant to put before the jury every fact and circumstance which has a tendency to show that the contract sued on never existed, and if you believe from all the facts and circumstances that the defendant never agreed to pay any bonus beyond what the testimony shows it paid, then you should find for the defendant.'' ·

We do not think this instruction had any place in this record, and we think it was calculated to prejudice the jury to decide that some undue and unusual importance was to be attached to the letter of the dead man, and in a measure tends to trench upon the weight of evidence, which is exclusively for the jury.

For the giving of this instruction and permitting the cross-examination of the appellant as to the character of the deceased president, we think this case should be reversed and another trial of it had.

*Reversed and remanded.*